UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHIRLEY SAVERAID,**
    Plaintiff,

vs.                                                    No. 1:13-cv-00818-JAP/ACT

**STATE FARM INSURANCE**
**COMPANY,**
    Defendant.

## MEMORANDUM OPINION AND ORDER

On October 7, 2013, Defendant State Farm Mutual Automobile Insurance Company (State Farm) moved for summary judgment. *See* DEFENDANT STATE FARM'S MOTION FOR SUMMARY JUDGMENT AND CONSOLIDATED MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (Doc. No. 11) (Defendant's Motion for Summary Judgment). State Farm contends that it has paid Plaintiff Shirley Saveraid all the money to which she is entitled under her two State Farm automobile insurance policies. On October 28, 2013, Plaintiff responded and cross-moved for partial summary judgment. *See* PLAINTIFF SHIRLEY SAVERAID'S RESPONSE IN OPPOSITION TO STATE FARM'S MOTION FOR SUMMARY JUDGMENT, AND CROSS-MOTION FOR SUMMARY JUDGMENT THAT NEW MEXICO LAW BE APPLIED TO INTERPRET THE INSURANCE POLICY AT ISSUE IN THIS CASE (Doc. No. 14).[1] The parties disagree about whether the Court must invalidate several features of Plaintiff's State Farm insurance policies, which were executed in Iowa, due to conflicts with New Mexico public policy. Because the application of

---

[1] On January 13, 2014, the Court heard argument on the motions. Plaintiff was represented by Mr. Stephen O'Brien and Mr. Roger Smith; State Farm was represented by Mr. Terry Guebert and Ms. RaMona Bootes.

1

Iowa law does not violate fundamental New Mexico public policy, the Court will grant State Farm's motion for summary judgment and deny Plaintiff's cross-motion for partial summary judgment.

## BACKGROUND

### A. THE MARCH 2011 CAR ACCIDENT

The facts are undisputed. On or about March 30, 2011, Plaintiff was involved in a single-car accident near Santa Rosa, New Mexico. Complaint for Declaratory Judgment to Determine Coverage and Policy Limits, Exhibit A to NOTICE OF REMOVAL (Doc. No. 1-1) (Complaint) ¶ 5. At the time of the accident, Plaintiff was a passenger in her 2003 Holiday Motor Home, which was being driven by her friend, Mr. Robin Hall. *Id.*; PLAINTIFF SHIRLEY SAVERAID'S BRIEF IN OPPOSITION TO STATE FARM'S MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF HER CROSS-MOTION FOR SUMMARY JUDGMENT THAT NEW MEXICO LAW BE APPLIED TO INTERPRET THE PROVISIONS OF THE INSURANCE POLICY AT ISSUE IN THIS CASE (Doc. No. 15) (Response) 28.

### B. PLAINTIFF'S TWO INSURANCE POLICIES

At the time of the March 2011 accident, Plaintiff held two insurance policies with State Farm: a policy for the 2003 Holiday Motor Home and a policy for a 2009 Ford Edge. *See* Policy Number 063763 7176-F24-15B-176-15, Exhibit A to Defendant's Motion for Summary Judgment (Doc. No. 11-1 & 11-2) (Motor Home Policy); Policy Number 63 71715-D04-15C, Exhibit B to Defendant's Motion for Summary Judgment (Doc. No. 11-3 & 11-4) (Ford Edge Policy). Both policies were issued in Iowa, where Plaintiff resides. Response at 1. Each policy provides liability coverage limits of $500,000 per person and underinsured motorist (UIM) coverage limits of $100,000 per person. Motor Home Policy (Doc. No. 11-1) at 1; Ford Edge

Policy (Doc. No. 11-3) at 2. The policies include several identical provisions that are relevant to the dispute.

First, and most significantly, the policies contain an anti-stacking provision, which reads: "if Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to you . . . by the State Farm Companies apply to the same bodily injury, then: the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid . . ." Motor Home Policy (Doc. No. 11-2) at 8; Ford Edge Policy (Doc. No. 11-4) at 5.

Second, the policies exclude vehicles that are provided liability coverage under the policy from the definition of an underinsured motor vehicle. Motor Home Policy (Doc. No. 11-2) at 6; Ford Edge Policy (Doc. No. 11-4) at 3. Third, and finally, the policies state that Iowa law controls the interpretation and application of each policy. Motor Home Policy (Doc. No. 11-2) at 22; Ford Edge Policy (Doc. No. 11-4) at 19.

## C.  PAYMENTS

Following the accident, Plaintiff filed claims with State Farm. State Farm treated Mr. Hall as a permissive driver and paid Plaintiff $500,000 in liability benefits under the 2003 Holiday Motor Home Policy. Affidavit of Lorna Morrow, State Farm Auto Claim Team Manager, Exhibit C to Defendant's Motion for Summary Judgment (Doc. No. 11-5) (Morrow Affidavit) ¶¶ 6-7. On July 15, 2013, Plaintiff filed suit against State Farm seeking to obtain UIM benefits under her two policies. *See* Complaint. On September 20, 2013, State Farm paid Plaintiff $100,000 in UIM benefits under the 2009 Ford Edge policy.[2] Morrow Affidavit ¶ 9.

---

[2] Although it is not relevant to the lawsuit, State Farm also paid Plaintiff $25,000 under an insurance policy owned by Mr. Hall, the driver.

3

**D. PLAINTIFF'S COMPLAINT**

Plaintiff asks the Court to reform the Iowa policies to allow stacking of her UIM benefits, so that she can receive UIM benefits under both policies. Complaint ¶ 22. In addition, Plaintiff argues that she is entitled to have her UIM coverage limits increased to match her liability limits under *Jordan v. Allstate Ins. Co.*, 149 N.M. 162 (2010). *Id.* ¶ 20. As a result of these requests, Plaintiff seeks a declaratory judgment that she is entitled to $1,000,000 in UIM benefits under her two State Farm policies. State farm has paid $100,000 of this amount.

## DISCUSSION

**A. STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a party may receive summary judgment if that party "shows that there is no genuine dispute as to any material fact and [the party] is entitled to judgment as a matter of law." When both parties move for summary judgment, the court must analyze each motion individually and on its own merits. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (explaining that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). "Cross-motions for summary judgments, however, do authorize a court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1223 (D.N.M. 2012) (citing *Buell Cabinet Co.*, 608 F.2d at 433; *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)). "Where the facts are not in dispute . . . , summary disposition is appropriate." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (citing FED. R. CIV. P. 56(c)).

**B.  CHOICE OF LAW**

According to the doctrine of *lex loci contractus*, New Mexico's choice-of-law rule, the law of the place where an insurance contract is executed controls the terms of the contract. *Shope v. State Farm Ins. Co.*, 122 N.M. 398, 400 (1996). However, there is an exception: a New Mexico court will refrain from applying the law of a different state if doing so would violate a "fundamental principle of justice" under New Mexico law. *Id.* at 400; *Reagan v. McGee Drilling Corp.*, 123 N.M. 68, 70 (N.M. Ct. App. 1997) ("When the conflict of laws rules lead to the law of a state whose law differs from that of the forum or when the parties have chosen a law different from the forum, the rule is that the forum may decline to apply the out-of-state law if it offends New Mexico public policy.").

A court should invoke the public policy exception only in "extremely limited" circumstances. *Reagan*, 123 N.M. at 70. "Otherwise, since every law is an expression of a state's public policy, the forum law would always prevail unless the foreign law were identical, and the exception would swallow the rule." *Id.*

The parties agree that Iowa law generally governs the interpretation of the Plaintiff's Iowa policies under the doctrine of *lex loci contractus*.[3] However, the parties disagree about whether the following three features of Plaintiff's insurance policies conflict with fundamental New Mexico public policy: (1) the policies prohibit inter-policy stacking of UIM benefits, (2) the policies exclude vehicles covered by the polices from the definition of an underinsured motor

---

[3] State Farm also argues that the Court should apply Iowa law because the policies include a contractual choice-of-law provision stating that Iowa law controls the interpretation of the policies. In the briefing, Plaintiff raises several challenges to the contractual choice-of-law provision and asks the Court to find it invalid. However, after reviewing the briefing and considering the parties' oral arguments, which were made on January 13, 2014, it is the Court's understanding that the parties agree Iowa law generally governs the policies under the doctrine of *lex loci contractus*. In addition, the parties agree on the legal standard by which a New Mexico court would determine whether to enforce Iowa law under the public policy exception.

5

vehicle (the owned vehicle exclusion), and (3) the policies provide lower UIM coverage than liability coverage. State Farm asserts that these features are fully enforceable under Iowa law and should be applied by the Court to preclude Plaintiff from further recovery. Plaintiff argues that these three terms are unenforceable and invalid because they violate New Mexico law and public policy. The Court will address each provision of the policies in turn.

1. The Anti-Stacking Provision

   i. Iowa Law Governs the Anti-Stacking Provision.

State Farm relies on *Shope* for the proposition that anti-stacking provisions do not violate fundamental New Mexico public policy. In *Shope*, the New Mexico Supreme Court enforced an anti-stacking provision in a Virginia insurance contract, after explaining that the appropriateness of stacking "is . . . a question of contract interpretation, not one of fundamental interests." *Shope*, 122 N.M. at 401. As Plaintiff points out, *Shope* involved intra-policy stacking: the plaintiff owned one insurance policy that covered two vehicles. Here, Plaintiff's State Farm policies prohibit inter-policy stacking of UIM benefits. Plaintiff argues that the difference between intra-policy stacking and inter-policy stacking is significant and that *Shope* does not control the outcome of this case.

However, a review of New Mexico case law does not reveal a firm distinction between intra-policy stacking and inter-policy stacking. In *Lopez v. Found. Reserve Ins. Co.*, 98 N.M. 166, 171 (1982), a case involving intra-policy stacking, the New Mexico Supreme Court explained that New Mexico favors intra-policy stacking for the same reasons it favors inter-policy stacking. "Where an insurance company charges a separate full uninsured motorist premium for each vehicle under a single or several policies, it is only fair that the insured be permitted to stack the coverages for which he has paid." *Id.* In addition, permitting an insured to

stack coverage when separate premiums have been paid protects the expectations of the insured. In evaluating an anti-stacking provision, "[t]he crucial question, therefore, is not whether multiple vehicles are insured under one policy or several, but whether the insured has paid one premium or several for the particular uninsured motorist coverage sought to be stacked." *Id.*

As *Lopez* indicates, the New Mexico Supreme Court has adopted the same rule for intra-policy stacking and inter-policy stacking. *See Konnick v. Farmers Ins. Co.*, 103 N.M. 112, 114 (1985) (citing both intra and inter-policy stacking cases in assessing whether plaintiffs could stack the UIM coverage of two separate policies issued by Farmers Insurance Company). In a recent case, the New Mexico Court of Appeals defined stacking as "the right of an insured to aggregate the coverage under two or more UM policies (interpolicy stacking), or under one UM policy covering more than one automobile (intrapolicy stacking), until all the damages of the insured are satisfied or until the limits of the applicable policies are exhausted." *Rehders v. Allstate Ins. Co.*, 139 N.M. 536, 543 (N.M. Ct. App. 2006). In *Rehders*, the Court of Appeals did not differentiate intra-policy stacking from inter-policy stacking; it conducted a unified review of New Mexico stacking jurisprudence and concluded that New Mexico "stacking jurisprudence effectuates the two functions. . . : to ensure that the insured gets what he or she pays for, and to fulfill the reasonable expectations of the insured." While these functions are important, they are not "fundamental for purposes of a choice-of-law analysis." *Montano v. Allstate Indem. Co.*, 135 N.M. 681, 688 (2004) (affirming the continued validity of *Shope*).

Plaintiff relies heavily on *Sloan v. Dairyland Ins. Co.*, 86 N.M. 65 (1974), to support her claim that prohibitions on inter-policy stacking violate fundamental New Mexico public policy. In *Sloan*, the New Mexico Supreme Court invalidated an "other insurance" clause, which limited uninsured coverage for injury occurring in a non-owned vehicle to the amount the uninsured

7

coverage exceeded the uninsured coverage of the non-owned vehicle. As applied to the facts of the case, the "other insurance" clause prevented the plaintiff's estate from stacking the uninsured motorist coverage of two different policies owned by two different individuals. However, unlike *Shope*, *Sloan* did not involve a choice-of-law dispute.

*Shope*, which does involve a choice-of-law dispute concerning the enforcement of an anti-stacking provision, does not distinguish between intra and inter-policy stacking. More importantly, *Shope* clearly indicates that the New Mexico policy in favor of both intra and inter-policy stacking is not a fundamental public policy: "While we interpret New Mexico insurance contracts to avoid repugnancy in clauses that prohibit stacking of coverages for which separate premiums have been paid, this rule is one of contract interpretation that does not rise to the level of a fundamental principle of justice." *Shope*, 122 N.M. at 400. Since, State Farm's prohibition of inter-policy stacking does not violate fundamental New Mexico public policy, the Court concludes that Iowa law governs the anti-stacking clauses in Plaintiff's insurance policies.

### ii. The Anti-Stacking Provision is Enforceable under Iowa Law.

In Iowa, insurers may prohibit the stacking of underinsured motorist coverage. *Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 724 (1995); Iowa Code § 516A.2 ("when more than one motor vehicle insurance policy is purchased by or on behalf of an injured insured and which provides . . . underinsured. . . motor vehicle coverage to an insured injured in an accident, the injured insured is entitled to recover up to an amount equal to the highest single limit for . . . underinsured . . . coverage"). In fact, Plaintiff does not dispute State Farm's contention that the anti-stacking provisions are enforceable in Iowa. Therefore, the Court finds that State Farm is not contractually required to pay Plaintiff UIM benefits under both policies. Because State Farm has

paid Plaintiff UIM benefits under the 2009 Ford Edge policy, Plaintiff has no legal basis to recover UIM benefits under the 2003 Holiday Motor Home policy.

### 2. The Owned Vehicle Exclusion

Plaintiff's 2003 Holiday Motor Home policy also contains an owned vehicle exclusion, which, if enforced, would prevent Plaintiff from receiving UIM benefits under the 2003 Holiday Motor Home policy. Plaintiff asks the Court to find that the owned vehicle exclusion violates fundamental New Mexico public policy and is therefore invalid. However, the Court need not address the issue because State Farm's anti-stacking provision independently prevents Plaintiff from recovering UIM benefits under the 2003 Holiday Motor Home policy.

### 3. The UIM Coverage Limits

Plaintiff's 2009 Ford Edge policy contains lower UIM coverage limits than liability limits.[4] If the policy had been executed in New Mexico, Plaintiff would be entitled to UIM coverage in an amount equaling the policy's liability coverage absent a valid written rejection of such coverage. *See Jordan*, 149 N.M. 162 (2010). Unlike New Mexico, Iowa does not require insurers to offer policy holders UIM coverage equal to liability coverage. *See* Iowa Code §§ 516A.1, 321A.1(11). The Iowa insurance regulation scheme merely requires an insurer to provide UIM coverage equal to the statutory minimum, unless the insurer obtains a written rejection.

Plaintiff's UIM coverage exceeds the statutory minimum required under Iowa law, *see* Iowa Code §§ 516A.1, 321A.1(11), and Plaintiff does not directly dispute that her UIM coverage

---

[4] The Court will not address Plaintiff's request to reform the UIM limits of the 2003 Holiday Motor Home policy because Plaintiff is not entitled to recover any UIM benefits under the policy.

limits are valid under Iowa law.[5] Rather, in the complaint, Plaintiff asks the Court to apply New Mexico law and reform her UIM coverage limits under *Jordan*.

      i.      **The Court will deny Plaintiff's Rule 56(d) Request for Additional Discovery.**

As a preliminary matter, Plaintiff moves for additional discovery, which she claims is relevant to the issue of what law governs her UIM limits, under Federal Rule of Civil Procedure 56(d). Plaintiff seeks information concerning whether State Farm ever offered Plaintiff UIM coverage equal to liability coverage and whether Plaintiff ever rejected UIM coverage. However, the discovery requested by the Plaintiff pertains to whether Plaintiff properly waived UIM coverage under New Mexico law. The Court finds that additional discovery is not needed to determine whether, as a preliminary matter, Iowa or New Mexico law governs the UIM coverage limits.

      ii.      **Limiting Plaintiff's UIM recovery to $100,000, the Iowa policy limit, does not violate Fundamental New Mexico Public Policy.**

According to State Farm, the Court should apply Iowa law and enforce the UIM limits in Plaintiff's policy because UIM/Liability matching is not fundamental to New Mexico public policy. State Farm argues that Iowa and New Mexico law both seek to protect members of the public against culpable uninsured motorists. It points out that technical differences in state law are insufficient to invoke the fundamental public policy exception, even when New Mexico law is more favorable to those whom the law seeks to protect, if the foreign state's law "does not promote a policy at odds with New Mexico policy." *Reagan*, 123 N.M. 68.

---

[5] State Farm claims that Plaintiff has conceded that her selection of $100,000 in UIM coverage is valid under Iowa law. While Plaintiff calls this a "gross misrepresentation" of her position, she does not explain why the UIM coverage selection should be considered invalid under Iowa, as opposed to New Mexico, law. *See* PLAINTIFF SHIRLEY SAVERAID'S REPLY BRIEF IN SUPPORT OF HER CROSS-MOTION FOR SUMMARY JUDGMENT THAT NEW MEXICO LAW BE APPLIED TO INTERPRET THE PROVISIONS OF THE INSURANCE POLICY AT ISSUE IN THIS CASE (Doc. No. 24) 5-6.

Plaintiff responds to State Farm's arguments by emphasizing the New Mexico Supreme Court's decision to retroactively apply the holding in *Jordan*. Plaintiff contends that the retroactive application of *Jordan* demonstrates that the *Jordan* rules governing the rejection of UIM coverage are fundamental to New Mexico public policy.

Plaintiff may be correct as a general matter. However, the Court need not address whether the *Jordan* principles are fundamental to New Mexico public policy in the abstract. A New Mexico court will decline to apply out-of-state law only in the extremely limited circumstance that application of the out-of-state law to the facts would violate a fundamental New Mexico public policy. *Reagan*, 123 N.M. at 70. Given the particular facts of this case, applying Iowa law does not conflict with fundamental New Mexico public policy. Prior to the institution of this lawsuit, State Farm paid Plaintiff $500,000 in liability benefits, plus $100,000 in UIM benefits, for a total recovery of $600,000. In so doing, State Farm acted in accordance with Iowa law, which permits a plaintiff to recover UIM benefits until she is fully compensated for her injuries or until her policy limits are exhausted. *See American States Ins. Co. v. Estate of Tollari*, 362 N.W.2d 519, 522 (1985). New Mexico law would not permit a greater recovery. To the contrary, if State Farm had issued Plaintiff's 2009 Ford Edge policy in New Mexico, Plaintiff would not be entitled to recover any UIM benefits under that policy.

In New Mexico, an insured is only entitled to UIM benefits to the extent that her UIM coverage exceeds the underinsured motorist's liability coverage. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219 (1985). Even if Plaintiff's UIM benefits were reformed under *Jordan* to equal $500,000 (the amount of Plaintiff's liability coverage), they would not exceed Mr. Hall's liability coverage, which also equals $500,000. Consequently, even if New Mexico law governed the 2009 Ford Edge policy, Plaintiff would not be entitled to any UIM benefits.

11

Although Plaintiff characterizes her request for additional UIM benefits as a request that the Court apply New Mexico law to reform her coverage limits, Plaintiff over-simplifies her position. In actuality, Plaintiff advocates for a hybrid approach: Plaintiff asks the Court to increase her UIM coverage limits under *Jordan*, while also asking the Court to contravene the well-settled New Mexico practice of deducting liability benefits from a plaintiff's UIM coverage. Plaintiff seeks $500,000 in UIM benefits under the 2009 Ford Edge policy, an amount much greater than what would be available to Plaintiff if either Iowa or New Mexico law governed the policy. New Mexico clearly has no public policy interest in this result; allowing Plaintiff to recover more than the amount that would be available to Plaintiff if New Mexico law uniformly governed Plaintiff's insurance policy would only result in a windfall. For this reason, the Court declines to apply New Mexico law. The Court finds that Plaintiff is, at most, entitled to recover $100,000 in UIM benefits under the 2009 Ford Edge policy.

**C.  CERTIFICATION**

On November 12, 2013, the Court sent counsel a letter advising them that it was considering certification of the issues to the New Mexico Supreme Court. The parties requested that the Court permit them to complete briefing before proceeding with certification. On December 9, 2013, when briefing was complete, Plaintiff asked the Court to certify the issues to the New Mexico Supreme Court. *See* PLAINTIFF SHIRLEY SAVERAID'S REPLY BRIEF IN SUPPORT OF HER CROSS-MOTION FOR SUMMARY JUDGMENT THAT NEW MEXICO LAW BE APPLIED TO INTERPRET THE PROVISIONS OF THE INSURANCE POLICY AT ISSUE IN THIS CASE (Doc. No. 24) 6. After reviewing the briefing, hearing oral argument, and considering the relevant law, the Court concludes that clear New Mexico law governs the

outcome of the case. Therefore, the Court will not certify the issues to the New Mexico Supreme Court.

IT IS THEREFORE ORDERED THAT:

1. DEFENDANT STATE FARM'S MOTION FOR SUMMARY JUDGMENT AND CONSOLIDATED MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (Doc. No. 11) is granted.

2. PLAINTIFF SHIRLEY SAVERAID'S RESPONSE IN OPPOSITION TO STATE FARM'S MOTION FOR SUMMARY JUDGMENT, AND CROSS-MOTION FOR SUMMARY JUDGMENT THAT NEW MEXICO LAW BE APPLIED TO INTERPRET THE INSURANCE POLICY AT ISSUE IN THIS CASE (Doc. No. 14) is denied.

*/s/ James A. Parker*

SENIOR UNITED STATES DISTRICT JUDGE